**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| BAM TECH SOLUTIONS, INC. | CASE NO. 23-53167-bem |
| *dba Bam Tech Solutions, LLC* | |
| | JUDGE BARBARA ELLIS-MONRO |
| DEBTOR. | |
| U.S. BANK NATIONAL ASSOCIATION AS INDENTURED TRUSTEE FOR ANGEL OAK MORTGAGE TRUST I, LLC 2018-PB1 | CONTESTED MATTER |
| MOVANT, | |
| V. | |
| BAM TECH SOLUTIONS, INC. | |
| DEBTOR, | |
| S. GREGORY HAYS | |
| TRUSTEE, | |
| RESPONDENTS. | |

## NOTICE OF HEARING

    **PLEASE TAKE NOTICE** that **U.S. BANK NATIONAL ASSOCIATION AS INDENTURED TRUSTEE FOR ANGEL OAK MORTGAGE TRUST I, LLC 2018-PB1** has filed a *Motion for Relief from Automatic Stay* and related papers with the Court seeking an order lifting the automatic stay to allow it to proceed under the Note and Deed to Secure Debt to foreclose on the real property held as collateral.

    **PLEASE TAKE FURTHER NOTICE** that the Court will hold an initial telephonic hearing for announcements on the *Motion for Relief from Automatic Stay* at the following number: **Toll Free Number: 833-568-8864, Meeting ID: 160 862 0914** at **10:15 A.M.** on **MAY 24, 2023** in Courtroom 1402, at the Richard B. Russell Federal Building and United States Courthouse, 75 Ted Turner Drive, SW, Atlanta, GA 30303.

    Matters that need to be heard further by the Court may be heard by telephone, by video conference, or in person, either on the date set forth above or on some other day, all as determined by the Court in connection with this initial telephonic hearing. Please review the "Hearing Information" tab on the judge's webpage, which can be found under the "Dial-in and Virtual Bankruptcy Hearing Information" link at the top of the webpage for this Court, www.ganb.uscourts.gov for more information.

    Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney, if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one.) If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your views, then you and/or your attorney must attend the hearing. You may also file a written response to the pleading with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate

stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk is: **United States Bankruptcy Court, 75 Ted Turner Drive, SW, Room 1340, Atlanta GA 30303.**

      If a hearing on the Motion for Relief from the Automatic Stay (the "Motion") cannot be held within thirty (30) days, Movant waives the requirement for holding a preliminary hearing within thirty (30) days of filing the motion and agrees to a hearing on the earliest possible date. Movant consents to the automatic stay remaining in effect until the Court orders otherwise.

Dated: April 18, 2023

                Respectfully Submitted,

                /s/ Laura A. Grifka_____
                Laura A. Grifka (GBN 312055)
                MᴄMICHAEL TAYLOR GRAY, LLC
                Attorney for Movant
                3550 Engineering Drive, Suite 260
                Peachtree Corners, GA 30092
                Telephone: (404) 474-7149
                Facsimile: (404) 745-8121
                E-mail: lgrifka@mtglaw.com
                MTG File No.: 23-000561-01

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| IN RE: | CHAPTER 7 |
| BAM TECH SOLUTIONS, INC.<br>*dba Bam Tech Solutions, LLC* | CASE NO. 23-53167-bem |
| | JUDGE BARBARA ELLIS-MONRO |
| DEBTOR. | |
| U.S. BANK NATIONAL ASSOCIATION AS<br>INDENTURED TRUSTEE FOR ANGEL OAK<br>MORTGAGE TRUST I, LLC 2018-PB1<br>                    MOVANT,<br>V.<br><br>BAM TECH SOLUTIONS, INC.<br>               DEBTOR,<br><br>S. GREGORY HAYS<br>               TRUSTEE,<br><br>              RESPONDENTS. | CONTESTED MATTER |

**<u>MOTION FOR RELIEF FROM AUTOMATIC STAY</u>**

      **COMES NOW** U.S. BANK NATIONAL ASSOCIATION AS INDENTURED TRUSTEE FOR ANGEL OAK MORTGAGE TRUST I, LLC 2018-PB 1 ("Movant"), a secured creditor in the above-captioned case, by and through counsel, and moves this Court to enter an order granting its request for relief from the automatic stay imposed by 11 U.S.C. § 362 and respectfully shows this Court as follows:

1.

      On April 3, 2023, Debtor filed a Ch. 7 petition with the Bankruptcy Court for the Northern District of Georgia.

2.

      Movant is the holder of an Interest Only Balloon Promissory Note in the original principal amount of $478,500.00, dated July 27, 2018, and signed by Bam Tech Solutions, Inc. by its managing member, Janice Quinn, (hereinafter "Note"). Said Note is secured by a perfected Deed to Secure Debt recorded with the Dekalb County, Georgia Clerk of Superior Court in Book 27072 at Page 520 on August 7, 2018 (hereinafter "Security Deed"), which describes real property owned by the Debtor known as: 87 Mayson Ave. NE, Atlanta, GA 303307 (hereinafter "Property"). A copy of the Note, Security Deed, Allonge(s), and Assignment(s) of Mortgage, are attached hereto as **<u>Exhibit A</u>** respectively.

3.

The Note is either made payable to Movant or has been duly indorsed. Movant, directly or through an agent, has possession of the Note. Movant is the original mortgagee or the beneficiary or the assignee of the Mortgage.

4.

The payoff, exclusive of legal fees and expenses incurred in connection with the instant motion, due and owing to the Movant as of April 7, 2023, is approximately $807,819.28.  Upon information and belief, the fair market value of the Property is approximately $788,000.00 (pursuant to Zillow and other on-line real property valuation apps).  The Debtor has the Property listed for sale for approximately $800,000.00

5.

Cause exists for relief from the automatic stay. The Note and Security Deed matured on August 1, 2019 and the loan was not paid in full as required.  Payments are not being made to the Movant and, as such, Movant's interests are not adequately protected. Additionally, there is no equity in the Property and such property is not necessary for an effective reorganization.

6.

In the event the automatic stay in this case is modified and/or this case is dismissed and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of Movant or Movant's successor or assignee.

**WHEREFORE**, Movant prays the Court as follows:

1.      Modify the Automatic Stay of 11 U.S.C. § 362(a) to permit Movant to enforce its security interest in the Property including but not limited to any non-bankruptcy remedies to foreclose and obtain possession;

2.      Modify Rule 4001(a)(3) of the Fed. R. Bankr. P. so that it is not applicable in this case to allow Movant to immediately enforce and implement this order granting relief from the automatic stay;

3.      Grant Movant such other and further relief as the Court deems just and proper.

Respectfully Submitted,
/s/ Laura A. Grifka
Laura A. Grifka (GBN 312055)
MCMICHAEL TAYLOR GRAY, LLC
Attorney for Movant
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092
Telephone: (404) 474-7149
Facsimile: (404) 745-8121
E-mail: lgrifka@mtglaw.com
MTG File No.: 23-000561-01

<u>**CERTIFICATE OF SERVICE**</u>

      I hereby certify that on the date set forth below, I electronically filed the foregoing **Motion for Relief from Automatic Stay and Notice of Hearing** with the Clerk of Court using the CM/ECF system which will automatically send an e-mail notification of such filing to the parties or attorneys of record. I have also on this day caused a copy of the pleading to be placed in the first-class United States mail, postage prepaid, addressed to the recipients not participating in the CM/ECF system.  All parties served are as follows:

<u>**Via U.S. Mail**</u>

Bam Tech Solutions, Inc.
5805 State Bridge Road, Suite G208
Duluth, GA 30097

Janice Quinn, Managing Member
Bam Tech Solutions, Inc.
87 Mayson Ave. NE
Atlanta, GA 30307

<u>**Via CM/ECF**</u>

Will B. Geer
Rountree Leitman Kein & Geer LLC
Century Plaza I
2987 Clairmont Road, Suite 350
Atlanta, GA 30329

S. Gregory Hays
Hays Financial Consulting, LLC
Suite 555
2964 Peachtree Road
Atlanta, GA 30305


Dated: April 18, 2023

                    /s/ Laura A. Grifka_____
                    Laura Grifka (GBN  312055)
                    MCMICHAEL TAYLOR GRAY, LLC
                    Attorney for Movant
                    3550 Engineering Drive, Suite 260
                    Peachtree Corners, GA 30092
                    Telephone: (404) 474-7149
                    Facsimile: (404) 745-8121
                    E-mail: lgrifka@mtglaw.com
                    MTG File No.: 23-000561-01

# EXHIBIT A

## INTEREST ONLY BALLOON PROMISSORY NOTE
### 12 Month Term
(Fixed Rate)

$478,500.00

Date: 07/27/2018

THIS LOAN IS PAYABLE IN FULL AT MATURITY. BORROWER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND ALL ACCRUED AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT MATURITY. BORROWER WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU MUST FIND A LENDER, WHICH MAY OR MAY NOT BE THIS LENDER, WILLING TO LEND YOU THE MONEY TO REFINANCE. IF BORROWER REFINANCES THIS LOAN AT MATURITY, BORROWER MAY BE REQUIRED TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF BORROWER OBTAINS REFINANCING FROM THIS LENDER.

87 Mayson Ave NE, Atlanta, GA, 30307

[Property Address]

1.    **BORROWER'S PROMISE TO PAY**

In return for a loan that **Bam Tech Solutions, Inc.**, a **A Georgia Corporation** ("Borrower") has received, Borrower promises to pay to **Angel Oak Prime Bridge, LLC**, a Georgia limited liability company ("Lender"), in U.S. Dollars the sum of **Four Hundred Seventy Eight Thousand Five Hundred ($478,500.00)** (this amount is called "Principal"), plus Interest. Borrower will make all payments due under this Note by cash, check or money order. Borrower understands that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2.    **INTEREST**

Interest ("Interest") will be charged on the unpaid Principal until the full amount of Principal has been paid. Borrower will pay Interest at an annual rate of Twelve percent (**12.000%**).

The interest rate required by this Section 2 above is the rate Borrower will pay so long as the loan is not in default. After any default described in Section 6(B) of this Note, Borrower will pay Default Interest at the rate of **16%** in addition to the Interest required to be paid prior to default ("Default Rate").

3.    **PAYMENTS**

(A)    **Time and Place of Payments**

Borrower shall make payments of **INTEREST ONLY** by making a payment to Lender or the Note Holder every month.

Borrower will make a payment to Lender on the date hereof for Interest from the date hereof

1

through the last day of the calendar month (unless the date hereof is the first day of a calendar month, in which case no separate payment of interest shall be due on the date hereof). Borrower will make its monthly payments on the **1st day of each month** beginning on **09/01/2018**. Borrower will make these payments every month to be applied to the Interest (in arrears) and any other charges or fees that Borrower may owe under this Note. Each monthly payment will be credited as of its scheduled due date and will be applied to Borrower's obligations. On **08/01/2019**, Borrower will pay the Principal, all unpaid interest and all other amounts Borrower owes Lender in full. That date of final payment is called the "Maturity Date."

Borrower will make monthly payments to Lender or the Note Holder at **3060 Peachtree Rd NW, #500, Atlanta, GA 30305** or at a different place if required by the Note Holder.

**(B)    Amount of Monthly Payments**

The monthly payment due under this Note will be in the amount of U.S. Dollars **$4,785.00**.

**4.    BORROWER'S RIGHT TO PREPAY**

Borrower has the right to make payments of Principal at any time before it becomes due on the Maturity Date. A payment of Principal only is known as a "Prepayment." When Borrower makes a Prepayment, Borrower will inform the Note Holder in writing that Borrower is making a Prepayment. Borrower may not designate a payment as a Prepayment if Borrower has not made all the monthly payments of interest due under this Note.

Borrower may make a full Prepayment or partial Prepayments without paying any Prepayment charge or fee. The Note Holder will use Prepayments to reduce the amount of Principal that Borrower owes under this Note. However, the Note Holder may apply Prepayment to the accrued and unpaid interest due at the time of any Prepayment before applying Prepayment to reduce the Principal amount of this Note. If Borrower makes a partial Prepayment, there will be no changes in the due date of Borrower's monthly payments unless the Note Holder agrees in writing to such change.

**5.    LOAN CHARGES**

If any law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower that exceeded permitted limits will be refunded to Borrower. The Note Holder may choose to make this refund by reducing the Principal Borrower owes under this Note or by making a direct payment to Borrower. If a refund is used to reduce the Principal, the reduction will be treated as a partial Prepayment.

**6.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 5 calendar days after the date it is due ("Grace Period"), Borrower will pay a late charge to the Note Holder in the amount of **10%** of Borrower's overdue payment amount or **$100.00**, whichever is greater ("Late Fee"). Borrower agrees to pay this Late Fee promptly. Borrower agrees that the Late Fee provided above is fair and reasonable compensation to Lender for the additional administrative time and effort incurred in collecting and processing delinquent payments. Borrower further agrees that the Default Rate is a fair and reasonable rate of interest to be charged after maturity or default of Borrower's obligations in light of the increased risks to Lender caused by a past due loan and the administrative time and effort incurred in collecting a past due loan.

2

**(B)**     **Default**

If Borrower does not pay the full amount of each monthly payment on the date it is due, Borrower will be in default. If Borrower does not pay all amounts due the Note Holder on the Maturity Date, Borrower will be in default. If any "Event of Default" occurs under the Security Instrument (defined below) or any of the other loan documents that secure this Note, Borrower will also be in default. All payments under this Note shall be applied first to Interest, then to Principal and then to Late Fees, if any. All installments of Interest and payments of Principal are payable in lawful money of the United States of America, which shall be legal tender in payment of all debts and dues, public and private, at the time of payment. If an Event of Default occurs, at the option of Lender the whole of the Principal then remaining unpaid together with all Interest accrued thereon, shall immediately become due and payable without further notice, and the lien of the Security Instrument given to secure the payment of this Note may be foreclosed.

**(C)**     **Notice of Default**

If Borrower is in default, the Note Holder may, but is not required to, send Borrower a written notice informing Borrower that if Borrower does not pay the overdue amount by a certain date, the Note Holder may require Borrower to pay immediately the full amount of Principal that has not been paid and all the interest that Borrower owes on this loan.

**(D)**     **No Waiver By Note Holder**

Even if at a time when Borrower is in default, the Note Holder does not require Borrower to pay immediately this loan in full as described above, the Note Holder will still have the right to call Borrower in default and demand payment in full if Borrower goes into default at a later time.

**(E)**     **Payment of Note Holder's Costs and Expenses**

If Borrower is in default and/or the Note Holder has required Borrower to pay immediately in full as described above, the Note Holder will have the right to be paid back by Borrower for all of its costs and expenses in enforcing and collecting this Note to the extent not prohibited by applicable law. Those expenses will include, for example, reasonable attorneys' fees incurred by the Note Holder in collecting this loan, whether the fees are incurred in collection proceedings, in foreclosure proceedings on the mortgage securing payment of this Note, in court-ordered mediation, at any trial, on any appeal, or in bankruptcy or administrative proceedings.

**7.**     **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by hand delivering it to Borrower personally or by mailing it by first class mail to Borrower at the address specified next to Borrower's signature block below or at a different address if Borrower gives the Note Holder a notice with a new or different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if Borrower is given notice of that different address.

**8.**     **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally, jointly and severally, obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to

pay amounts due under this Note and to perform his or her obligations to the Lender under any separate written agreement. Any person who takes over the obligations of this loan, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of them together. This means that any one of the Borrower or other obligors may be required to pay all of the amounts owed under this Note.

9.    **WAIVERS**

Borrower and any other person who has obligations to pay this Note waive the rights of demand, Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.    **SECURED NOTE**

This Note is a secured instrument. In addition to the protections given to the Note Holder under this Note, a mortgage (the "Security Instrument"), dated the same date as this Note and providing collateral security for repayment of this Note, protects the Note Holder from possible losses that might result if Borrower does not keep the promises that Borrower makes in this Note. That Security Instrument describes how and under what conditions Borrower may be required to make immediate payment in full of all amounts Borrower owes under this Note. Some of those conditions include the following:

**Transfer of the Property:** If all or any part of the mortgaged property or an interest therein is sold, transferred or further encumbered by the borrower or any mortgagor without the Lender's prior written consent, excluding (a) the creation of a purchase money security interest for household appliances incorporated into the mortgaged property, (b) the grant of any leasehold interest of three (3) years or less not containing an option to purchase or (c) reasonable and customary easements for utilities, cable and other services at the mortgaged property, the balance of the Note shall become immediately due and payable at the option of Lender without further or additional notice to the borrower. Lender or the Note Holder, as applicable, may, but is not required to, permit the transferee of the mortgaged property to assume its obligations under this Note and for the loan, if the credit of such person is satisfactory to Lender. If the Lender permits the person to assume its obligations, the interest payable on the sums secured by the Security Instrument and assumed by such person shall be at the rate the Lender may establish or require.

11.    **EXTENSION OF NOTE**

Lender, at its sole discretion, has the ability to extend this Note beyond the original loan term and Maturity Date on a month to month basis. Lender, at its sole discretion, may add a fee of one percent (1%) of the outstanding principal balance of this Note for each month this obligation is extended beyond the original Maturity Date. Any fee charged may be charged at the time of the extension or may be added to the payoff amount for the obligations due under this Note.

12.    **GOVERNING LAW**

This Note shall be governed as to validity, interpretation, construction, effect, and in all other respects by the laws and decisions of the State of Georgia.

13.    **BUSINESS LOAN**

The undersigned represents and warrants that the loan is a "Business Loan" in accordance with Georgia law.

4

14.    **CONSENT TO JURISDICTION**

TO INDUCE LENDER TO ACCEPT THIS NOTE, BORROWER IRREVOCABLY AGREES THAT, SUBJECT TO LENDER'S SOLE AND ABSOLUTE ELECTION, ALL ACTIONS OR PROCEEDINGS IN ANY WAY ARISING OUT OF OR RELATED TO THIS NOTE WILL BE LITIGATED IN COURTS HAVING SITUS IN Dekalb COUNTY, GEORGIA. BORROWER HEREBY CONSENTS AND SUBMITS TO THE JURISDICTION OF ANY COURT LOCATED WITHIN Dekalb COUNTY, GEORGIA, WAIVES PERSONAL SERVICE OF PROCESS UPON BORROWER, AND AGREES THAT ALL SUCH SERVICE OF PROCESS MAY BE MADE BY CERTIFIED OR REGISTERED MAIL DIRECTED TO BORROWER AT THE ADDRESS STATED IN THE SECURITY INSTRUMENT AND SERVICE SO MADE WILL BE DEEMED TO BE COMPLETED UPON ACTUAL RECEIPT.

15.    **WAIVER OF JURY TRIAL**

BORROWER AND LENDER (BY ACCEPTANCE OF THIS NOTE), HAVING BEEN REPRESENTED BY COUNSEL, KNOWINGLY AND VOLUNTARILY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS (A) UNDER THIS NOTE OR ANY RELATED AGREEMENT OR UNDER ANY AMENDMENT, INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED OR WHICH MAY IN THE FUTURE BE DELIVERED IN CONNECTION WITH THIS NOTE, OR (B) ARISING FROM ANY BANKING RELATIONSHIP EXISTING IN CONNECTION WITH THIS NOTE, AND AGREE THAT ANY SUCH ACTION OR PROCEEDING WILL BE TRIED BEFORE A COURT AND NOT BEFORE A JURY. BORROWER AGREES THAT IT WILL NOT ASSERT ANY CLAIM AGAINST LENDER ON ANY THEORY OF LIABILITY FOR SPECIAL, INDIRECT, CONSEQUENTIAL, INCIDENTAL OR PUNITIVE DAMAGES.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED BORROWER(s).

Bam Tech Solutions, Inc.

BY: _____ (SEAL)

Printed name: Janice Quinn

Title: **MANAGING MEMBER**

Borrower Address: **7-13 Washington SQ N 22B
New York, NY  10003**

*[Sign One Original Only]*

5



BOOK **27072** Pg **520**

Filed and Recorded:

8/7/2018 3:32:53 PM

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

Georgia Intangible Tax Paid $0.00

----------------------- *[Space Above This Line For Recording Data]* -----------------------

After recording, return to:

▮▮▮▮▮▮▮▮▮▮

Loan Number: ▮▮▮▮▮▮▮
STATE OF GEORGIA
COUNTY OF **Dekalb**

**DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS,
SECURITY AGREEMENT AND FIXTURE FILING**

THIS DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY
AGREEMENT AND FIXTURE FILING ("Security Deed") is given on **07/27/2018**, by **Bam Tech
Solutions, Inc., a Georgia), A Georgia Corporation** with an address of **7-13 Washington SQ
N 22B New York, NY 10003**

("Grantor" or "Borrower"), and **ANGEL OAK PRIME BRIDGE LLC**, a Georgia limited liability
company ("Grantee" or "Lender"), whose address is **3060 Peachtree Road, Suite 500, Atlanta
GA 30305** to secure a debt (and payment of interest thereon and all other indebtedness as
described herein) evidenced by Promissory Note of even date with this Security Deed made by
Grantor to the order of Grantee in the principal amount of **Four Hundred Seventy Eight
Thousand Five Hundred ($478,500.00)** ("Note"), having a maturity date of **08/01/2019**, to be
paid promptly as and when due.
*WITNESSETH:*

FOR AND IN CONSIDERATION of Ten and 00/100 Dollars ($10.00) and other good and
valuable consideration from Grantor to Grantee at or before the execution, sealing and delivery
hereof, the receipt and sufficiency of which is hereby acknowledged, Grantor has and hereby
does grant, bargain, sell and convey unto Grantee and its successors and assigns, all that
certain real property with a street address of **87 Mayson Ave NE, Atlanta, GA, 30307** and
being more particularly described in **EXHIBIT "A"** attached hereto and incorporated herein by
reference, together with all structures and improvements now and/or hereafter located thereon,
the rents, issues and profits thereof, all furniture, furnishings, fixtures and equipment now and/or
hereafter located thereon, and also all gas and electric fixtures, heaters, air conditioning
equipment, machinery, motors, bath tubs, sinks, toilets, water basins, pipes, faucets, and other
plumbing and heating fixtures, refrigerator equipment, blinds or shutters, which are now or may
hereafter pertain to or be used with, in or on the real property, and which, even though they are
detached or detachable, are and shall be deemed fixtures and accessions to the freehold and a
part of the real property, and all additions thereto and replacements thereof (the real property,
improvements and personal property and the intangible personal property described below,
collectively the "Property"); all present or future deposits, accounts, security deposits, leases,

1

contracts, contract rights, instruments, permits, licenses, choses-in-action, insurance and condemnation proceeds and other general intangible rights of any nature whatsoever now or hereafter arising from, affecting or concerning the Property, any portion thereof or any interest therein, and now or hereafter existing, acquired or held by Grantor, and derived from or relating to any operation, development, ownership or management of the Property or businesses or concessions conducted on the Property, including, without limitation: (i) any agreements for the provision of utilities to all or any portion of the Property, (ii) all deposits for the use or possession of all or any portion of the Property, (iii) all revenue arising from, growing out of, or in connection with the use and/or occupancy of the Property, and all products and proceeds of the foregoing, (iv) all other items of personal property used or useful in connection with the operation of the Property, and all accessories, parts, equipment and accessions now attached to or used in connection therewith or which may hereafter at any time be placed in or added to the Property, and also any and all replacements of any such equipment or personal property.

TO HAVE AND TO HOLD the Property and all of the rights, members and appurtenances thereof, to the use, benefit and behoof of the Grantee, its successors and assigns, in fee simple forever.

THIS SECURITY DEED is intended to operate and is to be construed as a deed passing legal title to Grantee and is made under the provisions of the laws of the State of Georgia governing deeds to secure debt (including, e.g., O.C.G.A. §44-14-60), and not as a mortgage.

Should the indebtedness hereby secured be paid according to the tenor and effect thereof when the same shall become due and payable, and should Grantor perform all covenants herein contained, then this Security Deed shall be surrendered and canceled.

And the Grantor hereby covenants with the Grantee that the Grantor is indefeasibly seized of the Property in fee simple; that the Grantor has full power and lawful right to convey the Property in fee simple as aforesaid; that it shall be lawful for the Grantee at all times peaceably and quietly to enter upon, hold, occupy and enjoy the Property; that the Property is free from all encumbrances except for those, if any, specifically approved in writing by Grantee prior to the date of full execution of this Security Deed; that the Grantor will make such further assurances to perfect the fee simple title to the Property in the Grantee as may reasonably be required; and that the Grantor does hereby fully warrant the title to the Property and will defend the same against the lawful claims of all persons whomsoever.

This Security Deed is given for the purpose of securing payment and performance of Grantor's obligations under the Note and the other loan documents (the "Obligations"). It is the intention of Grantor and Grantee that this Security Deed shall establish for the benefit of Grantee a perpetual or indefinite security interest in the Property to secure the Obligations as provided by O.C.G.A. §44-14-80(a)(1).

And the Grantor does hereby covenant and agree with the Grantee as follows:

1.     Payment of the Note. All and singular the principal and interest and other sums of money payable by virtue of the Note and this Security Deed, or either, shall be paid promptly on the days when the payments become due.

2.     Compliance with Terms of Note and Security Deed. Grantor shall comply with and abide by each and every stipulation, agreement, condition and covenant set out in the Note, this Security Deed and all other loan documents.

3.     Payment of Taxes, Liabilities, Levies and Insurance Premiums. Grantor shall pay all and singular the taxes, levies, liabilities, obligations, and encumbrances of every nature on the Property, whether prior or subordinate in lien, dignity and effect to the lien and security title

of this Security Deed, each in accordance with its respective terms, conditions and requirements, and, if the same are not paid promptly, the Grantee may at any time, before or after delinquencies, pay the same without waiving or affecting the option to foreclose or exercise any right hereunder, and every payment made by Grantee shall become part of the principal indebtedness secured by this Security Deed and shall bear interest from the date of expenditure at the interest rate set out in the Note until paid in full.  Grantor covenants and agrees:  (a) to pay all taxes and assessments levied or assessed upon the Property before the same become delinquent, and in no event to permit the Property, or any part thereof, to be sold for nonpayment of taxes or assessments, and to provide Grantee, at its request, a copy of payment receipts evidencing payment of taxes within ten (10) days of payments made; (b) to comply strictly with all laws and governmental regulations and rules affecting the Property and any construction thereon or its operation; (c) to pay all taxes that may be levied or assessed on this Security Deed or the moneys secured hereby; (d) to permit no mechanic's or other liens arising either by contract or by law, to be created or rest upon all or any part of the Property for thirty (30) days without the same being paid, released or transferred to a surety bond, and discharge of the Property therefrom procured; (e) to permit no subordinate liens on the Property without notice to and the prior written consent of Grantee; (f) to keep the Property insured as required by this Security Deed and to pay promptly the necessary premiums and deliver to Grantee such evidence of insurance coverage as Grantee may require until the Note is paid in full.  Until full payment of the Note or any extensions or renewals thereof, in whole or in part, and until payment of all other indebtedness or liability that may become due or owing hereunder and secured hereby, Mortgagor shall faithfully and promptly comply with and perform each and every covenant and provision on the part of Mortgagor to be complied with and performed pursuant to the terms of this mortgage

4.    Maintenance of Insurance Coverage and Application of Proceeds.

(a)    The interest of the Grantor in the Property shall at all times be protected by adequate fire and multiple perils insurance covering all buildings and improvements, through a company or companies acceptable to the Grantee, and in an amount equal to the full insurable value of the buildings and improvements. Without limitation of the foregoing, the Grantee shall receive original insurance policies or the original evidence thereof, as to the fire and extended coverage insurance (including windstorm coverage), business interruption insurance and rent loss insurance, as may be required by Grantee.  If the Property is located within a flood hazard zone, Grantee shall require a policy of flood insurance on the Property. All insurance policies shall be in amounts, in forms and issued by companies satisfactory to Grantee, together with endorsements to the policies naming Grantee as an additional insured.

(b)    Grantor shall also maintain a policy of general commercial liability insurance, in amounts, in form and issued by a company satisfactory to Grantee.

(c)    All such policies shall be issued by an insurer licensed to do business in the county where the Property is located and whose claims paying ability is rated at least "A" by Standard and Poor's or A/A - VIII by A.M. Best as published in Best's Key Rating Guide. Loss under such insurance policies shall be payable first to the Grantee to the extent of its interest. If the Grantor shall fail to obtain any required insurance, the Grantee may place and pay for such insurance or any part thereof without waiving or affecting its option to foreclose or exercise any right hereunder, and each and every such payment shall become part of the indebtedness secured by this Security Deed and shall bear interest from the date thereof at the rate provided in the Note.

3

DEED BOOK  27072 Pg 523

(d)    Except as otherwise expressly provided below, the proceeds from any loss covered by insurance shall be, at the sole option and discretion of the Grantee applied to restoration of the Property or toward repayment of the loan secured by this Security Deed.

5.    <u>Waste</u>. The Grantor shall permit, commit, or suffer no waste, impairment or deterioration of the Property, except reasonable wear and tear, and in the event of failure of the Grantor to keep the buildings constituting a portion of the Property or improvements thereon in good repair, the Grantee may make such repairs as in its discretion it may deem necessary for the proper preservation thereof, and the full amount of each and every such payment shall be due and payable thirty (30) days after demand, and shall be secured by the lien and security title of this Security Deed and shall bear interest from the date thereof at the rate provided in the Note.

6.    <u>Acceleration of Maturity of Note upon Default</u>. If, following any applicable grace, notice or cure period allowed by the Note or any loan document: (i) any of the sums of money referred to in the Note or in this Security Deed be not promptly and fully paid when the same severally become due and payable; or (ii) each and every stipulation, agreement, condition and covenant of the Note, this Security Deed or the other loan documents, is not promptly and fully performed, complied with and abided by (each of the foregoing is an "Event of Default"); then: (a) all obligations under the Note and under this Security Deed, including but not limited to sums advanced by the Grantee to protect its security or lien position in the Property or any of its rights under this Security Deed, shall immediately and without further notice to Grantor bear interest at the Default Rate as defined in the Note; (b) the aggregate principal due under the Note, together with all other obligations under the Note, this Security Deed and the other loan documents, shall become due and payable forthwith or thereafter at the option of the Grantee; and (c) Grantee shall be entitled to exercise all rights and remedies available at law and in equity, including the foreclosure of this Security Deed.

7.    <u>Appointment of Receiver</u>. Upon the occurrence of an Event of Default or the filing of a bill to foreclose this Security Deed or any other security instrument encumbering or secured by the Property, the Grantee shall immediately, and without notice and as a matter of strict right, be entitled to the appointment of a receiver of the Property and of the rents, issues, profits, prepaid rentals or security monies, deposits and revenues thereof, from whatsoever source derived, with the usual powers and duties of receivers in such cases, and this appointment shall be made by any court with proper jurisdiction as a matter of strict right to the Grantee and without reference to the adequacy or inadequacy of the value of the Property, or to the solvency or insolvency of the Grantor, and such rents, profits, profits, prepaid rentals or security deposits, income and revenue shall be applied by such receiver to the payment of the indebtedness, cost and charges secured by this Security Deed, according to the order of such court, and the receiver may be continued in possession of the Property until the time of the sale thereof in foreclosure and until the confirmation of such sale by the court. Grantor will pay to Grantee upon demand all expenses of the receivership, including, without limitation, all receivers' fees, reasonable attorneys' fees, and agents' compensation or commissions, incurred pursuant hereto and all such expenses shall constitute obligations of the Grantor secured by this Security Deed.

8.    <u>Power of Sale</u>. Upon the occurrence of an Event of Default, Grantee, at its option, upon accelerating the obligations secured hereby, may sell and dispose of the Property or any part of the Property at public sale or sales at the usual place for conducting sales at the courthouse of the county in which the Property or any part of the Property is located, to the

4

DEED BOOK 27072 Pg 524

highest bidder for cash, in order to pay the obligations secured hereby and all expenses of the sale and of all proceedings in connection therewith, including reasonable attorneys' fees and costs, after first advertising the time, place, and terms of sale once a week for four (4) weeks immediately preceding such sale (but without regard to the number of days) in a newspaper in which Sheriff's sales are advertised in said county, in each case in accordance with any applicable laws, all other notice being hereby waived by Grantor. With respect to any personal property or fixtures included in or located on the Property, Grantee may, at its option, sell or otherwise dispose of the same by public or private proceedings, separate from the sale of the real property, in accordance with the provisions below. At any sale conducted pursuant to this section, Grantee may execute and deliver to the purchaser a conveyance of the Property, or any part of the Property, or any personal property or fixtures included in or located on the Property, in fee simple, which conveyance may contain recitals as to the occurrence of an Event of Default hereunder and the said recitals shall be presumptive evidence that all preliminary acts prerequisite to said sale and deed were in all things duly complied with, and to this end Grantor hereby constitutes and appoints Grantee its agent and attorney in fact, if a default exists hereunder, to make such recitals, sale and conveyance and thereby to divest Grantor of all right, title, or equity in and to the Property and to vest the same in the purchaser or purchasers at such sale or sales, and all the reasonable acts and doings of said agent and attorney in fact are hereby ratified and confirmed. Grantor agrees that such recitals shall be binding and conclusive upon Grantor and that the conveyance to be made by Grantee or its assigns (and in the event of deed in lieu of foreclosure, than as to such conveyance) shall be effectual to bar all right, title and interest, equity of redemption, including all statutory redemption, homestead, dower, curtesy and all other exemptions of Grantor, or its successors in interest, in and to the Property. At the election of Grantee, the Property, or any part hereof, may be sold in one parcel and as an entirety, or in such parcels, manner or order as Grantee in its sole discretion may elect, and one or more exercises of the powers herein granted shall not extinguish or exhaust the power unless the entire Property is sold or the obligations secured hereby are satisfied in full, and Grantee, or its assigns, shall collect the proceeds of such sale, applying such proceeds as set forth herein, and in the event of deficiency, Grantor shall immediately on demand from Grantee pay over to Grantee, or its nominee, such deficiency. The power of sale and agency granted in this section are coupled with an interest and are irrevocable by death, dissolution or otherwise, are granted as cumulative of the other remedies provided by law for collection of the obligations secured hereby, and shall not be exhausted by one exercise thereof but may be exercised until full payment of the obligations secured hereby.

9.    Grantor as Tenant Holding Over.  If any sale of the Property or any part thereof occurs pursuant to this Security Deed, Grantor shall be deemed a tenant holding over and shall forthwith deliver possession to the purchaser or purchasers at such sale or be summarily dispossessed according to applicable provisions of law applicable to tenants holding over.

10.    Grantee's Power of Enforcement.  Upon the occurrence of an Event of Default, Grantee may, either with or without entry or taking possession as provided in this Security Deed or by law and in lieu of or in addition to exercising any power of sale given in this Security Deed, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy (i) to enforce payment of the Note or the performance of any term thereof or any other right, (ii) to foreclose this Security Deed and to sell the Property as provided by law or in equity, and (iii) to pursue any other remedy available to it, all as Grantee shall deem most effectual for such purposes. Grantee shall take action either by foreclosure proceedings or by the exercise of its powers of sale, entry or taking possession, as Grantee may determine in its sole and absolute discretion.

5

Upon any foreclosure or other sale of all or any portion of the Property, Grantee may bid for and purchase the Property or any part thereof and shall be entitled to apply all or any part of the obligations secured by this Security Deed as a credit against the purchase price.

Any purchase money, proceeds, and avails of any sale or other disposition of the Property, or any part thereof, or any other sums collected by Grantee pursuant to this Security Deed, the Note, or the other loan documents may be applied by Grantee to the payment of the obligations secured hereby in such priority and proportions as Grantee in its discretion shall deem proper.

If Grantee proceeds to enforce any right or remedy under this Security Deed by receiver, entry, or otherwise and such proceedings are discontinued or abandoned for any reason or are determined adversely to Grantee, then and in every such case Grantor and Grantee shall be restored to their former positions and rights hereunder, and all rights, powers and remedies of Grantee shall continue as if no such proceeding or action had been taken.

No right, power, or remedy conferred upon or reserved to Grantee by this Security Deed or any of the other loan documents is intended to be exclusive of any other right, power, or remedy, but each and every such right, power, and remedy shall be cumulative and concurrent and shall be in addition to any other right, power, and remedy given under this Security Deed, any such other loan document, or now or hereafter existing at law or in equity or by statute. The exercise by Grantee of any such right, power, and remedy shall not operate as an election of remedies by Grantee and shall not preclude the exercise by Grantee of any or all other such rights, powers, or remedies. If the sale of all or any part of the Property is permitted hereunder, then such sale of the Property may be in one or more parcels and in such manner and order as Grantee, in its sole discretion, may elect, it being expressly understood and agreed that the right of sale arising out of an Event of Default shall not be exhausted by any one or more sales, but other and successive sales may be made until all of the Property has been sold or until the Grantor's obligations have been fully satisfied.

11.    Condemnation and Related Actions:  In the event that the Property, or any part thereof, or any interest therein, shall be condemned and taken for public use under the power of eminent domain, or shall be affected by governmental or private action in a manner that entitles Grantor to an award of damages, compensation or other consideration of any kind, Grantor hereby confirms its grant to Grantee of a security interest in all such awards, including without limitation damages and other consideration given on account of such taking or other action, and same shall be paid directly to the Grantee, up to the aggregate amount then evidenced and secured by the Note and this Security Deed, and shall be applied to the payments due thereunder in inverse order of maturity.

12.    Subrogation of Grantee. To the extent of the indebtedness of the Grantor to the Grantee described herein or secured hereby, the Grantee is hereby subrogated to the lien or liens and to the rights of the owner and holders thereof of each and every security deed, mortgage, lien or other encumbrance on the Property which is paid or satisfied, in whole or in part, out of the proceeds of the Note, and the respective liens of said security deeds, mortgages, liens or other encumbrances shall be, and the same and each of them hereby is preserved and shall pass to and be held by the Grantee as security for the Note, to the same extent that it would have been preserved and would have been passed to and been held by the Grantee had it been duly and regularly assigned, transferred, set over and delivered unto the Grantee by separate deed of assignment, notwithstanding the fact that the same may be satisfied and canceled of record, it being the intention of the parties hereto that the same will be

6

satisfied and canceled of record by the holders thereof at or about the time of the recording of this Security Deed.

13.    Costs and Expenses of Enforcement. The Grantor shall pay all and singular costs, charges and expenses, including counsel fees (whether or not suit is brought or appeal taken therefrom), reasonably incurred or paid at any time by the Grantee because of the failure on the part of the Grantor to perform, comply with and abide by each and every stipulation, agreement, condition and covenant of the Note, this Security Deed and all loan documents, and every such payment shall become part of the indebtedness secured by this Security Deed shall bear interest from the date of such expenditure at the Default Rate.

14.    Extension of Time and/or Modification of Terms. No extension of time or modification of the terms of the Note and this Security Deed, and no release of any part or parts of the Property shall, without the consent of the Grantee, release, relieve, or discharge the Grantor from the payment of any of the sums hereby secured, but in such event the Grantor shall nevertheless be liable to pay such sums according to the terms of such extension or modifications unless specifically released and discharged in writing by the Grantee; further, acceptance of part payment of any obligation owed by Grantor and secured hereby, or acceptance of part performance of any covenant, or delay by Grantee for any period of time in exercising the option to mature the entire debt, shall not operate as a waiver of the right to exercise such option or act upon such default, partial acceptance or any subsequent default.

15.    Future Advances. It is the intent hereof to secure payment of the Note whether the entire amount shall have been advanced to the Grantor on the date hereof or at a later date, and to secure any other amount that may be added to the secured indebtedness under the terms of the loan documents. This Security Deed secures the principal debt as set out in the Note, advances received by the Grantor from the Grantee during the term hereof, all other indebtedness that may hereafter be due, owing or existing from the Grantor to the Grantee during the existence of this Security Deed, and any renewal or renewals of the Note or any other note(s) for said present or future indebtedness, including but not limited to modifications of the terms and conditions of the Note such as extensions of the maturity date, increases or decreases of the interest rate and/or changes in the terms of repayment. Notwithstanding any provision hereof, it is the intention to secure all future advances made commencing with the date hereof and continuing through twenty years after date hereof, by the lien and security title of this Security Deed in all respects as though such advances had been made simultaneously with the execution hereof and secured hereby; provided, however, that all such further or future advances shall be wholly optional with the Grantee and further provided, however, that no such advance or advances shall cause the unpaid principal obligation hereby secured to exceed twice the amount of the original aggregate principal amount of the Note, except that there may be added to such amount accrued interest thereon and any and all disbursements made by the Grantee for the payment of taxes, levies or insurance on the Property covered by the lien and security title of this Security Deed, and all reasonable attorneys' fees, costs of collection and court costs incurred, as provided in this Security Deed.

16.    Severability. It is mutually agreed between the parties hereto that in case any word, clause, term, phrase or section set out in the Note and/or this Security Deed should be held to be unconstitutional or illegal by any court of competent jurisdiction, the same shall not affect, alter or otherwise impair the meaning of any other word, clause, term, phrase or section in the Note and this Security Deed, and the same shall stand in full force and effect and shall be obligatory upon the successors, assigns, heirs and legal representatives of both parties hereto.

17.    <u>Assignment of Leases and Property Income</u>. Grantor hereby absolutely and unconditionally assigns and transfers to Grantee, (i) all right, title and interest of Grantor in and under all leases, lettings, tenancies and licenses of the Property or any part thereof now or hereafter entered into and all amendments, extensions, renewals and guaranties thereof, all security therefor, and all moneys payable thereunder (collectively, "Leases") and (ii) all rents, income, accounts, receivables, issues, profits, security deposits and other benefits to which Grantor may now or hereafter be entitled from the Property or in connection with the Leases (collectively, the "Property Income"). Grantor shall not otherwise assign, transfer, pledge or encumber in any manner the Leases or the Property Income or any portion thereof. Grantor shall have a license to collect and use the Property Income as the same becomes due and payable, revocable by Grantee, so long as no Event of Default has occurred, but may not collect any Property Income more than two (2) months in advance of the date the same becomes due. The assignment in this section shall constitute an absolute and present assignment of the Leases and the Property Income, and not an additional assignment for security, and the existence or exercise of the Grantor's revocable license to collect Property Income shall not operate to subordinate this assignment to any subsequent assignment. The exercise by Grantee of any of its rights or remedies under this section shall not be deemed or construed to make Grantee a mortgagee-in-possession.

18.    <u>Due on Sale or Transfer; Assumption of Security Deed</u>.  If all or any part of the Property, or any interests in it or ownership interests in Grantor, are sold or transferred to a third party unrelated to or not controlled by Grantor, or further encumbered, including without limitation, the granting of any easement or beneficial interest in the Property (with the sole exceptions of (a) the creation of a purchase money security interest for household appliances incorporated into the Property, (b) a transfer by devise, descent or by operation of law upon the death of any person who owns  an interest in the Property or any person who owns an interest in Grantor or in any other related borrower entity, (c) the grant of any leasehold interest in the Property of three (3) years or less not containing an option to purchase, or (d) reasonable and customary easements for utilities, cable and other services at the Property), at the option of Grantee and without further notice to Grantor all sums secured by this Security Deed shall become immediately due and payable.  Grantee may, but is not required to, permit the transferee of the Property to assume Grantor's obligations under the Note and this Security Deed, if the  credit of such person  is satisfactory to Grantee in its sole discretion.  If Grantee permits the person to assume Grantor's obligations, the interest payable on the sums secured by this Security Deed and assumed by such person shall be at the rate Grantee may establish or require at the time of assumption.

19.    <u>Uniform Commercial Code Security Agreement.</u>

(a)    This Security Deed shall serve as a security agreement covering all personal property and equipment owned by Grantor, used in the operation and use of the Property (collectively "Personal Property") and subject to the grant of a security interest under the Uniform Commercial Code as in effect in the State of Georgia (the "UCC"), including all property now or hereafter affixed or attached to the Property which is or has become "fixtures" (as defined in the UCC) and part of the Property.  Grantor hereby grants to Grantee a security interest in the Personal Property.

(b)    So long as no event of default exists, Grantor may sell or otherwise dispose of the Personal Property when obsolete, worn out, inadequate, unserviceable or unnecessary for use in the operation of the Property, but only upon replacing the same with

8

other Personal Property at least equal in value and utility to the disposed Personal Property. Any replacement, substituted or after-acquired Personal Property shall be subject to the security interest granted herein.

(d)      With respect to all items of Personal Property which are or will become fixtures on the Property, this Security Deed, upon recording in the public records, shall constitute a "fixture filing" within the meaning of the UCC. The information provided in this Section 20(d) is provided so that this Security Deed shall comply with the requirements of the UCC for a security instrument to be filed as a financing statement. Grantor is the "Debtor" and its name and mailing address are set forth in the preamble hereof. Grantee is the "Secured Party" and its name and mailing address from which information concerning the security interest granted herein may be obtained are also set forth in the preamble hereof.

(e)      After an event of default, Grantee may exercise its rights in respect of the Personal Property, and in addition to all other rights and remedies available to a secured party on default under the UCC also may: (i) require Grantor, at its expense and upon request of Grantee, to assemble all or part of the Personal Property and make it available to Grantee at any reasonable place or places designated by Grantee; and (ii) without notice except as required by the UCC, to sell, lease or otherwise dispose of the Personal Property or any part thereof in one or more parcels at public or private sale, and without the necessity of gathering at the place of sale of the property to be sold, at any of Grantee's offices or elsewhere, at such time or times, for cash, on credit or for future delivery, and at such price or prices and upon such other terms as may be deemed commercially reasonable.

(f)      Grantor agrees that, to the extent notice of sale shall be required by law, a reasonable authenticated notification of disposition shall be satisfied by notice given at least ten (10) days prior to any such sale and such notice shall (i) describe Grantor and Grantee, (ii) describe the Personal Property that is the subject of the intended disposition, (iii) state the method of intended disposition, and (iv) state the time and place of any public disposition or the time after which any private sale is to be made. At any sale of the Personal Property may be made without warranties and, if permitted by law, Grantee may bid (which bid may be, in whole or in part, in the form of cancellation of indebtedness) for the purchase, lease, license or other disposition of the Personal Property or any portion thereof. Any sale may be adjourned from time to time by announcement at the time and place fixed for the sale, and future sales may, without further notice, be made at the time and place to which the original sale was so adjourned. To the extent permitted by law, Grantor hereby specifically waives all rights of redemption, stay, marshalling or appraisal which it has or may have under any applicable law now existing or hereafter enacted.

20.    <u>Prohibition Against Use or Storage of Hazardous Waste</u>. Grantor represents that the Property has not been and hereby covenants that the Property will not be used in whole or in part for the use, handling, storage, transportation, or disposal of hazardous or toxic materials, substances, or wastes (which terms, as used in this Security Deed, include, without limitation, asbestos, polychlorinated bipenyls, and petroleum products) in violation of all applicable laws, ordinances, rules, orders, directives or regulations now or hereafter existing (collectively, "Environmental Laws"). Grantor covenants to comply in all respects with all Environmental Laws affecting the Property. Grantor shall indemnify and hold Grantee harmless from and against all claims, costs, losses, and liabilities incurred by or imposed on Grantee as a result of the past, present, or future use, handling, storage, transportation, or disposal of hazardous or toxic materials, substances, or wastes on the Property or any property adjacent thereto or failure of Grantor to comply with the Environmental Laws. The provisions in this section will

9

12.    TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, GUARANTOR AGREES THAT HE/SHE/IT WILL NOT DEMAND OR ELECT TRIAL BY JURY OF ANY ISSUE, MATTER, CLAIM OR COUNTERCLAIM WHICH NOW EXISTS OR MAY HEREAFTER ARISE IN CONNECTION WITH OR UNDER THIS GUARANTY. GUARANTOR WAIVES FULLY THE RIGHT TO TRIAL BY JURY TO THE EXTENT THAT IT MIGHT NOW OR HEREAFTER EXIST AND ACKNOWLEDGES THAT HE/SHE/IT HAS GIVEN SUCH WAIVER KNOWINGLY AND VOLUNTARILY.

IN WITNESS WHEREOF, this Guaranty Agreement has been executed as of the date first written above.

GUARANTOR:

Janice Quinn

_____
Printed name: **Janice Quinn**

Bam Tech Solutions, Inc.

By: _____
Printed name: **Janice Quinn**
Title: **MANAGING MEMBER**

Address: **7-13 Washington SQ N 22B, New York, NY 10003**

4

survive the repayment of the indebtedness secured hereby, the satisfaction of this Security Deed, and the transfer of the Property in connection with the foreclosure of this Security Deed, Grantee's exercise of its power of sale or Grantee's acceptance of a deed in lieu thereof, as to any liability arising under this section caused by the actions of Grantor, its agents, representatives or tenants, on the Property.

21.   General Provisions. In this Security Deed and the Note it secures and in any other loan documents, the singular shall include the plural and the masculine shall include the feminine or neuter gender.  This Security Deed constitutes the entire agreement between the parties hereto with respect to the Property and the terms and provisions hereof may not be modified except by written instrument signed by the party to be charged.  Time is of the essence of this Security Deed and the other loan documents and no waiver of any obligation hereunder or of the obligation secured hereby shall at any time thereafter be held to be a waiver of the terms hereof or of the Note secured hereby.  Whenever the terms "Grantor" or "Grantee" are used in this Security Deed such terms shall be deemed to include the heirs, administrators, executors, successors, and assigns of said parties, as applicable.  All rights and powers herein granted to the Grantee shall inure to and include its successors and assigns, and all obligations herein imposed on the Grantor shall extend to and include Grantor's heirs, administrators, executors, successors and assigns, as applicable.

22.   Property Address; Notice Address.  Grantor acknowledges, covenants and agrees that for all purposes under O.C.G.A. § 44-14-162.2, the street address for the Property is the address to be used for all notices to Grantor under this Security Deed and, unless and until Grantor provides written notice to Grantee to the contrary, Grantor's address for any notices shall be the address set out in the first paragraph of this Security Deed.

23.   Grantor's Waivers.  GRANTOR HEREBY WAIVES ANY RIGHT GRANTOR MAY HAVE UNDER THE CONSTITUTION OR THE LAWS OF THE STATE OF GEORGIA OR THE CONSTITUTION OR THE LAWS OF THE UNITED STATES OF AMERICA TO NOTICE, OTHER THAN EXPRESSLY PROVIDED FOR IN THIS SECURITY DEED, OR TO A JUDICIAL HEARING PRIOR TO THE EXERCISE OF ANY RIGHT OR REMEDY PROVIDED BY THIS SECURITY DEED TO SECURED PARTY AND GRANTOR WAIVES GRANTOR'S RIGHTS, IF ANY, TO SET ASIDE OR INVALIDATE ANY SALE DULY CONSUMMATED IN ACCORDANCE WITH THE PROVISIONS OF THIS SECURITY DEED ON THE GROUND (IF SUCH BE THE CASE) THAT THE SALE WAS CONSUMMATED WITHOUT A PRIOR JUDICIAL HEARING. ALL WAIVERS BY GRANTOR IN THIS SECTION HAVE BEEN MADE VOLUNTARILY, INTELLIGENTLY AND KNOWINGLY, AFTER GRANTOR HAS BY GRANTOR'S ATTORNEY BEEN FIRST APPRISED OF AND COUNSELED WITH RESPECT TO GRANTOR'S POSSIBLE ALTERNATIVE RIGHT

[Grantor's Initials]

24.   This Security Deed shall be governed by the laws of the State of Georgia.

The following riders are or may be executed by Grantor and attached to this Security Deed [check box as applicable]:

☒ Multiple Unit Rider   ☒ Balloon Note Rider

10

DEED BOOK 27072 Pg 531

☐ Condominium Rider  ☐ Planned Unit Development Rider

[THIS SECTION WAS INTENTIONALLY LEFT BLANK]

[GRANTOR SIGNATURE PAGE FOLLOWS]

IN WITNESS WHEREOF, this Security Deed has been executed as of the date and year first above written, under seal by the Grantor.

GRANTOR:

Signed, sealed and delivered in the presence of:          Bam Tech Solutions, Inc.

By:
Unofficial Witness
Print Name of witness: _____          Name: Janice Quinn
                                                 Title: MANAGING MEMBER

_____

Notary Public, _____ County, GA          State of N.J,

Print Name of Notary Public: _____          County of N, _____

My commission expires:_____
        [Notary Seal]   David Anthony Francis ___.
                        ATTORNEY AT LAW
                            of the
                        State of New Jersey

12

DEED BOOK 27072 Pg 533

Exhibit "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 210, OF THE
15TH DISTRICT, OF DEKALB COUNTY, GEORGIA, SAID PROPERTY BEING IMPROVED
PROPERTY NOW OR FORMERLY KNOWN AS 87 MAYSON AVENUE NE, ACCORDING TO
THE PRESENT SYSTEM OF NUMBERING IN DEKALB COUNTY, GEORGIA, AND BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING ON THE EAST SIDE OF SOUTH MAYSON AVENUE, WHICH POINT IS 217.1 FEET
NORTH FROM THE NORTHEAST CORNER OF SOUTH MAYSON AVENUE AND HARDEE
STREET, AND WHICH POINT IS ON THE DIVIDING LINE BETWEEN THE PROPERTY
FORMERLY OWNED BY ETHEL OLIVER AND THAT FORMERLY OWNED BY HARRY
OLIVER; AND RUNNING THENCE EAST ALONG THE LINE WHICH DIVIDED THE
PROPERTY FORMERLY OWNED BY SAID PARTIES 99.5 FEET; THENCE SOUTH 40 FEET;
THENCE WEST 99.5 FEET TO SOUTH MAYSON AVENUE; AND RUNNING THENCE NORTH
ALONG THE EAST SIDE OF SOUTH MAYSON AVENUE 40 FEET TO THE BEGINNING POINT.

BEING THE SAME PROPERTY AS THAT CONVEYED BY WARRANTY DEED DATED June 25,
2007, FROM HOUSES R US, INC., TO DEXTER HENNINGTON, AS RECORDED June 28, 2007,
AT DEED BOOK 28083, PAGE 776, DEKALB COUNTY, GEORGIA RECORDS.

## MULTIPLE UNIT RIDER TO SECURITY INSTRUMENT

THIS MULTIPLE UNIT RIDER shall be deemed to amend and supplement the Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing (the "Security Instrument") of the same date, given by **Bam Tech Solutions, Inc., a A Georgia Corporation**

(the "Borrower") to secure Borrower's Promissory Note (the "Note") to **ANGEL OAK PRIME BRIDGE, LLC,** a Georgia limited liability company (the "Lender") of the same date and covering the property described in the Security Instrument and located at **87 Mayson Ave NE, Atlanta, GA, 30307.**

COVENANTS. In addition to the covenants and agreements made in the Security Instrument, the following provisions shall apply:

**USE OF PROPERTY; COMPLIANCE WITH LAW**. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

**SUBORDINATE LIENS**. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**RENT LOSS INSURANCE**. Borrower shall maintain insurance against rent loss at the Property in addition to the other hazards for which insurance is required in this loan transaction.

**MODIFICATION OF LEASES**. Borrower shall not modify, amend, renew or extend the leases with tenants at the Property without the prior written consent of Lender. Any modification, amendment, renewal or extension of any lease made without Lender's written consent shall not be binding on Lender. As used in this paragraph, the word "lease" shall mean "sublease" if the Security Instrument encumbers a leasehold or if Lender has consented to a sublease of the applicable unit at the Property.

**ASSIGNMENT OF RENTS**. Borrower has assigned and transferred to Lender all the rents, profits and revenues from the Property under the Security Instrument, with the right of Borrower to receive the rents, profits and revenues unless or until the occurrence of any event of default or breach by Borrower under the Note or the Security Instrument.

If Lender gives notice of breach or default to Borrower: (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the rents of the Property; and (iii) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time after the occurrence of a default or breach by Borrower. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender.

1

**CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Note and the Security Instrument and Lender may invoke any of the rights and remedies permitted by the Note and the Security Instrument.

BY SIGNING BELOW, Borrower hereby accepts and agrees to the terms and covenants contained in this Multiple Unit Rider to the Security Instrument.

Signed, sealed and delivered in the presence of:

_____          Barn Tech Solutions, Inc.

Unofficial Witness                        By: _____ (SEAL)
Print Name of witness: _____      Name: Janice Quinn
                                          Title: **MANAGING MEMBER**

_____
Notary Public, _____ County, GA

Print Name of Notary Public: _____

My commission expires: _____ David Anthony Francis Esq.
         [Notary Seal]                    ATTORNEY AT LAW
                                              of the
                                        **State** of New Jersey

2

## BALLOON RIDER

THIS BALLOON RIDER is made as of **07/27/2018**, and is attached and incorporated into the Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's obligations under a promissory note in favor of **Angel Oak Prime Bridge LLC, a Georgia limited liability company ("Lender")**, of this date and covering the property described in the Security Instrument located at **87 Mayson Ave NE, Atlanta, GA, 30307**, in **Dekalb** County, Georgia.

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND ALL ACCRUED AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT MATURITY. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU MUST FIND A LENDER, WHICH MAY OR MAY NOT BE THIS LENDER, WILLING TO LEND YOU THE MONEY TO REFINANCE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY BE REQUIRED TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THIS LENDER.**

Signed, sealed and delivered in the presence of:

GRANTOR:

**Bam Tech Solutions, Inc.**

By:

Unofficial Witness

Print Name of witness:

Notary Public _____ County, GA

Name:  **Janice Quinn**

Title: **MANAGING MEMBER**

Print Name of Notary Public: _____

My commission expires: _____

[Notary Seal]

David Anthony Francis Esq.
ATTORNEY AT LAW
of the
**State of New Jersey**

**[Sign One Original Only]**

1

DEED BOOK 27072 Pg 537

Exhibit "A"

ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT NO. 210, OF THE
15TH DISTRICT, OF DEKALB COUNTY, GEORGIA, SAID PROPERTY BEING IMPROVED
PROPERTY NOW OR FORMERLY KNOWN AS 87 MAYSON AVENUE NE, ACCORDING TO
THE PRESENT SYSTEM OF NUMBERING IN DEKALB COUNTY, GEORGIA, AND BEING
MORE PARTICULARLY DESCRIBED AS FOLLOWS:

BEGINNING ON THE EAST SIDE OF SOUTH MAYSON AVENUE, WHICH POINT IS 217.1 FEET
NORTH FROM THE NORTHEAST CORNER OF SOUTH MAYSON AVENUE AND HARDEE
STREET, AND WHICH POINT IS ON THE DIVIDING LINE BETWEEN THE PROPERTY
FORMERLY OWNED BY ETHEL OLIVER AND THAT FORMERLY OWNED BY HARRY
OLIVER; AND RUNNING THENCE EAST ALONG THE LINE WHICH DIVIDED THE
PROPERTY FORMERLY OWNED BY SAID PARTIES 99.5 FEET; THENCE SOUTH 40 FEET;
THENCE WEST 99.5 FEET TO SOUTH MAYSON AVENUE; AND RUNNING THENCE NORTH
ALONG THE EAST SIDE OF SOUTH MAYSON AVENUE 40 FEET TO THE BEGINNING POINT.

BEING THE SAME PROPERTY AS THAT CONVEYED BY WARRANTY DEED DATED June 25,
2007, FROM HOUSES R US, INC., TO DEXTER HENNINGTON, AS RECORDED June 28, 2007,
AT DEED BOOK 20053, PAGE 776, DEKALB COUNTY, GEORGIA RECORDS.

**Lender: Angel Oak Prime Bridge, LLC**

Borrower/Grantor: **Bam Tech Solutions, Inc.**

Date of Security Deed: **07/27/2018**

### ACKNOWLEDGEMENT OF WAIVER OF BORROWER'S RIGHTS

BY EXECUTION OF THIS PARAGRAPH, GRANTOR EXPRESSLY (1) ACKNOWLEDGES THE RIGHT TO ACCELERATE THE DEBT AND THE POWER OF ATTORNEY GIVEN IN THE DEED TO SECURE DEBT, ASSIGNMENT OF LEASES AND RENTS, SECURITY AGREEMENT AND FIXTURE FILING (THE "SECURITY DEED") TO LENDER TO SELL THE PREMISES BY NON-JUDICIAL FORECLOSURE UPON DEFAULT BY GRANTOR WITHOUT ANY JUDICIAL HEARING AND WITHOUT ANY NOTICE OTHER THAN SUCH NOTICE AS IS REQUIRED TO BE GIVEN UNDER THE SECURITY DEED, (2) WAIVES ANY AND ALL RIGHTS THAT GRANTOR MAY HAVE UNDER THE FIFTH AND FOURTEENTH AMENDMENTS TO THE CONSTITUTION OF THE UNITED STATES, THE VARIOUS PROVISIONS OF THE CONSTITUTION FOR THE SEVERAL STATES OR BY REASON OF ANY OTHER APPLICABLE LAW TO NOTICE AND JUDICIAL HEARING PRIOR TO THE EXERCISE BY LENDER OF ANY RIGHT OR REMEDY HEREIN PROVIDED TO LENDER IN THE SECURITY DEED EXCEPT SUCH NOTICE AS IS SPECIFICALLY REQUIRED TO BE PROVIDED UNDER THE SECURITY DEED, (3) ACKNOWLEDGES THAT GRANTOR HAS READ THE SECURITY DEED AND THIS PARAGRAPH AND ANY AND ALL QUESTIONS REGARDING THE LEGAL EFFECT OF SAID SECURITY DEED AND ITS PROVISIONS HAVE BEEN EXPLAINED FULLY TO GRANTOR AND GRANTOR HAS BEEN AFFORDED AN OPPORTUNITY TO CONSULT WITH COUNSEL OF GRANTOR'S CHOICE PRIOR TO EXECUTING THE SECURITY DEED AND THIS ACKNOWLEDGEMENT, (4) ACKNOWLEDGES THAT ALL WAIVERS OF THE AFORESAID RIGHTS OF GRANTOR HAVE BEEN MADE KNOWINGLY, INTENTIONALLY AND WILLINGLY BY GRANTOR AS PART OF A BARGAINED FOR LOAN TRANSACTION AND (5) AGREES THAT THE PROVISIONS HEREOF ARE INCORPORATED INTO AND MADE A PART OF THE SECURITY DEED.

**Read and Agreed to by Grantor.**

Signed, sealed and delivered in the presence of:

_____
Unofficial Witness
Print Name of witness: _____

_____
Notary Public, _____ County, GA
Print Name of Notary Public: _____

My commission expires:_____

GRANTOR:

**Bam Tech Solutions, Inc.**

By: _____

Name: **Janice Quinn**
Title: **MANAGING MEMBER**

[Notary Seal/Stamp]

David Anthony Francis Esq.
ATTORNEY AT LAW
of the
**State of New Jersey**

1

DEED BOOK 26227 PG 539
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## CLOSING ATTORNEY AFFIDAVIT

Before the undersigned attesting officer, personally appeared the undersigned closing attorney, who, having been first duly sworn according to law, states under oath as follows:

In closing the above Grantor's loan, but prior to the execution of the Deed to Secure Debt, Assignment of Leases and Rents, Security Agreement and Fixture Filing and Acknowledgement of Waiver of Borrower's Rights by Grantor, I reviewed with and explained to Grantor the terms and provisions of the Deed to Secure Debt and particularly the provisions thereof authorizing Lender to sell the secured property by a non-judicial foreclosure under a power of sale, together with the Acknowledgement of Waiver of Borrower's Rights and informed Grantor of Grantor's rights under the Constitution of the United States and the Constitution of the State of Georgia to notice and a judicial hearing prior to such foreclosure in the absence of a knowing, intentional and willing contractual waiver by Grantor of Grantor's rights. After said review with and explanation to Grantor, Grantor executed the Deed to Secure Debt and the Acknowledgement of Waiver of Borrower's Rights.

Based on said review with and explanation to the Grantor, it is my opinion that Grantor knowingly, intentionally and willingly executed said waiver of Grantor's Constitutional rights to notice and judicial hearing prior to any said non-judicial foreclosure.

_____

Printed name: _____   **David Anthony** Francis Esq.

Closing Attorney   **ATTORNEY AT LAW**
of the
**State** of New Jersey

Sworn to and subscribed before me, the undersigned attesting officer, on the date set forth above.

_Tania M Cleary_
Notary Public, _____ County, GA

Print Name of Notary Public: _Tanya M Cleary_

My commission expires: _3/6/22_
[Notary Seal]

**TANYA M. CLEARY**
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires 3/6/2022

1



DEED BOOK **27755** Pg **187**

Filed and Recorded:
8/27/2019 12:46:17 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092

(CORRECTIVE)
**Assignment of Security Deed**        Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, **ANGEL OAK PRIME BRIDGE, LLC** 3060 Peachtree Road, NW, Suite 500, **Atlanta GA 30305** (Assignor) by these presents does assign and set over, without recourse, to **GREENLEAF INCOME TRUST II 300 DELAWARE AVENUE, SUITE 900,** New Castle DE 19801 (Assignee) the described security deed with all interest, all liens, any rights due or to become due thereon, executed by **BAM TECH SOLUTIONS INC, A GEORGIA], A GEORGIA CORPORATION** to **ANGEL OAK PRIME BRIDGE LLC, A GEORGIA LIMITED LIABILITY COMPANY.**
Said security deed Dated: 7/27/2018 is recorded in the State of GA, County of De Kalb on 8/7/2018, Book 27072 Page 520
**AMOUNT: $ 478,500.00    **THIS ASSIGNMENT IS BEING RECORDED TO CORRECT THE ASSIGNEE ON ASSIGNMENT RECORDED ON 01/30/2019 IN BOOK 27363 PAGE 175** Property Address: 87 MAYSON AVE NE, ATLANTA, GA 30307
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory. Executed on: _____
ANGEL OAK PRIME BRIDGE, LLC
By its Attorney in fact, Servis One, Inc. dba BSI Financial Services

By: _____
~~Lee Sitterley~~
~~AVP Support Services~~

BAM TECH SOLUTIONS INC

Signed, sealed and delivered this 7·24·19 in the presence of:

Witness: _Kristie James_

State of _PA_
County of _Crawford_
Date Notarized: _7-24-19_

_Elizabeth M Reynolds_
_1300027_
Notary public, State of _PA_
My commission expires: _2-8-2020_

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Elizabeth M Reynolds Notary Public
City of Titusville, Crawford County
My Commission Expires Aug 8 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES



DEED BOOK **27755** Pg **188**

Filed and Recorded:
8/27/2019 12:46:17 PM
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092

### Assignment of Security Deed

Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, GREENLEAF INCOME TRUST II 300 DELAWARE AVENUE, SUITE 900, New Castle DE 19801 (Assignor) by these presents does assign and set over, without recourse, to SMIF, LLC 3060 Peachtree Road NW, Suite 500, Atlanta GA 30305 (Assignee) the described security deed with all interest, all liens, any rights due or to become due thereon, executed by BAM TECH SOLUTIONS INC, A GEORGIA], A GEORGIA CORPORATION to ANGEL OAK PRIME BRIDGE LLC, A GEORGIA LIMITED LIABILITY COMPANY.   Said security deed Dated: 7/27/2018 is recorded in the State of GA, County of De Kalb on 8/7/2018, Book 27072 Page 520 AMOUNT: $ 478,500.00
Property Address: 87 MAYSON AVE NE, ATLANTA, GA 30307
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.  Executed on:
GREENLEAF INCOME TRUST II
By its Attorney in fact, Servis One, Inc. dba BSI Financial Services

By: _____

Lee Sitterley
AVP Support Services

BAM TECH SOLUTIONS INC

Signed, sealed and delivered this **7-24-19** in the presence of:

_____
Witness:  Kristie James

State of ___PA___
County of ___Crawford___
Date Notarized: ___7-24-19___

Elizabeth M Reynolds

138027
Notary public, State of ___PA___
My commission expires: ___8-8-2020___

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Elizabeth M. Reynolds, Notary Public
City of Titusville, Crawford County
My Commission Expires Aug 8 2020
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

2021/122706 DEED BOOK 29582 Pg 575
Filed and Recorded: 7/23/2021 2:11:00 PM
Recording Fee: $25.00
Prepared By:

█████████

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

RETURN TO:
C. R. Hall
2860 Exchange Blvd. # 100
Southlake TX 76092
Parcel # ████████         **Assignment of Security Deed**         Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, SMIF, LLC  3060 Peachtree Road NW, Suite 500, Atlanta GA 30305
(Assignor) by these presents does assign and set over, without recourse, to ANGEL OAK MORTGAGE TRUST PB, LLC
3060 Peachtree Road NW, Ste. 500, Atlanta GA 30305 (Assignee) the described security deed with all interest, all liens, any
rights due or to become due thereon, executed by BAM TECH SOLUTIONS INC, A GEORGIA], A GEORGIA
CORPORATION to ANGEL OAK PRIME BRIDGE LLC, A GEORGIA LIMITED LIABILITY COMPANY.   Said security
deed Dated: 7/27/2018 is recorded in the State of GA, County of De Kalb on 08/07/2018, Book 27072 Page 520 AMOUNT: $
478,500.00   Property Address: 87 MAYSON AVE NE, ATLANTA, GA 30307
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper
signatory. Executed on:  **3-8-21**
SMIF, LLC
By its Attorney In Fact, Servis One, Inc. dba BSI Financial Services

By: _____
        Lee Sineriev,
        AVP Support Services                                BAM TECH SOLUTIONS INC

Signed, sealed and delivered this _____ in the presence of:     State of _PA_
                                                                     County of _Crawford_
                                                                     Date Notarized: _3-8-21_

Witness: McHennessy Readmond

                                                                     _____
                                                                     Jillian Urey
                                                                     Notary public, State of _PA_
                                                                     My commission expires: _10-8-21_

                            COMMONWEALTH OF PENNSYLVANIA
                                    NOTARIAL SEAL
                              Jillian Urey, Notary Public
                            City of Titusville, Crawford County
                            My Commission Expires  June 8, 2021
                            MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

                    GA   De Kalb                              BSI/ANGELOAK/AOM

2021-123882 DEED BOOK 29586 Pg 752
Filed and Recorded: 7/26/2021 12:11:00 PM
Recording Fee: $25.00
Prepared By:

Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

RETURN TO:
C. R. Hall
2360 Exchange Blvd. # 100
Southlake TX 76092
Parcel #████████        **Assignment of Security Deed**        Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, ANGEL OAK MORTGAGE TRUST PB, LLC 3060 Peachtree Road NW,
Ste. 500, Atlanta GA 30305 (Assignor) by these presents does assign and set over, without recourse, to **ANGEL OAK
MORTGAGE TRUST 1, LLC 2018-PB1** 3060 Peachtree Road NW, Ste. 500, Atlanta GA 30305 (Assignee) the described
security deed with all interest, all liens, any rights due or to become due thereon, executed by **BAM TECH SOLUTIONS INC,
A GEORGIA , A GEORGIA CORPORATION** to ANGEL OAK PRIME BRIDGE LLC, A GEORGIA LIMITED
LIABILITY COMPANY.   Said security deed Dated: 7/27/2018 is recorded in the State of GA, County of De Kalb on
08/07/2018, Book 27072 Page 520 AMOUNT: $ 478,500.00   Property Address: 87 MAYSON AVE NE, ATLANTA, GA
30307
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper
signatory. Executed on: 3-8-21
ANGEL OAK MORTGAGE TRUST PB, LLC
By its Attorney in fact, Servis One, Inc. dba BSI Financial Services

By: _____                                    BAM TECH SOLUTIONS INC ██████

Lee Stoerley
Signed, sealed ___AVP Support Services___    in the presence of:

Witness: McKinssey Beadmond

State of PA
County of Crawford
Date Notarized: 023 3-8-21

Jillian Urey
Notary public, State of __PA__
My commission expires: 10-8-21

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
Jillian Urey, Notary Public
City of Titusville, Crawford County
My Commission Expires June 8, 2021
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

GA   De Kalb                          BSI/ANGELOAK/AOM

2022148181  DEED BOOK 30599 Pg 744
**Filed and Recorded: 10/6/2022 10:22:00 AM**
**Recording Fee: $25.00**
**Prepared By:**

Prepared By/Return To:
McMichael Taylor Gray, LLC
3550 Engineering Drive, Suite 260
Peachtree Corners, GA 30092

TAX ID:

CROSS INDEX TO DEED
BOOK 27072 PAGE 520
DEKALB COUNTY,
GEORGIA RECORDS

## CORRECTIVE ASSIGNMENT OF SECURITY DEED

*This is being recorded to correct the chain of Assignments and reflect the true intent of the initial recording order of the Assignment recorded in Book 2958 Page **752**, re-recorded in Book 29881, Page 373 and the Assignment recorded in Book 29585, Page **750**, thus reflecting the current holder as US BANK NATIONAL ASSOCIATION AS INDENTURED TRUSTEE FOR ANGEL OAK MORTGAGE TRUST I, LLC 2018-PB1*

Property: 87 Mayson Ave NE, Atlanta, GA 30307

**FOR VALUE RECEIVED** the receipt and sufficiency of which are hereby acknowledged, **Angel Oak Mortgage Trust I, LLC 2018-PB1** does hereby grant, bargain, sell, convey and assign unto **US BANK NATIONAL ASSOCIATION AS INDENTURED TRUSTEE FOR ANGEL OAK MORTGAGE TRUST I, LLC 2018-PB1,** whose address is c/o BSI Financial Services, 314 S. Franklin Street, Second Floor, Titusville, PA 16354, all its right, title, interest, obligations, and money due to and to become due thereon in and to that certain Security Deed (or Deed to Secure Debt) executed by Bam Tech Solutions, Inc aka BAM TECH Solutions, LLC, in the original amount of $478,500.00 for the use and benefit of Angel Oak Prime Bridge LLC, its successors and assigns, July 27, 2018 and recorded on August 7, 2018 in Book 27072 at Page 520, Dekalb County, Georgia Records.

IN WITNESS WHEREOF, the undersigned has caused this instrument to be executed by its duly authorized officer, on this __29__ day of ____September____, 2022.

Witness
Print Name: __Wesley Parnell__

Witness
Print Name: __Cynthia Thomas__

**Angel Oak Mortgage Trust I, LLC 2018-PB1**
By: BSI Financial Services, as its Attorney in Fact

By #1: _____

Print Name: __Cheryl Mallory__

Title: __AVP__

By #2: _____

Print Name: __Christopher Carman__

Title: __VP__

(CORPORATE SEAL)

STATE OF ____TEXAS____
COUNTY OF ____DALLAS____

Subscribed and sworn to, before me ____Ashley Azure____ on this _29_ day of _September_, 2022, by __Cheryl Mallory, and Christopher Carman_____, who proved to me on the basis of satisfactory evidence to be the person(s) who appeared before me.

(NOTARY SEAL)

Notary Public   Ashley Azure
My Commission Expires: 11/02/2024

ASHLEY AZURE
Notary ID #129190392
My Commission Expires
November 2, 2024

Document drafted by and
RECORDING REQUESTED BY:
BSI Financial Services, Inc.
7505 Irvine Center Drive
Suite 200
Irvine, CA 92618

_____

SPACE ABOVE TIIIS LINE FOR RECORDER'S USE

## LIMITED POWER OF ATTORNEY

The trusts identified on the attached Schedule A (the "Trusts"), by and through U.S. Bank National Association, a national banking association organized and existing under the laws of the United States and having an office at 60 Livingston Avenue, EP-MN-WS3D, St Paul, MN 55107, not in its individual capacity but solely as Trustee ("Trustee"), hereby constitutes and appoints BSI Financial Services, Inc. ("Servicer"), and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Servicer, *to* execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (12) below; provided however, that (a) the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the tenns of the related servicing agreements, (b) all actions taken by Servicer pursuant to this Limited Power of Attorney must be in accordance with Federal, State and local laws and procedures, as appJicable and (c) no power is granted hereunder to take any action that would be either adverse to the interests of or be in the name of U.S. Bank National Association in its individual capacity. This Limited Power of Attorney is being issued in connection with Servicer's responsibilities to service certain mortgage loans (the "Loans") held by the Trustee. These Loans are secured by collateral comprised of mortgages, deeds of trust, deeds to secure debt and other fonns of security instruments (collectively the "Security Instruments") encumbering any and all real and personal property delineated therein (the "Property") and the Notes secured thereby. Please refer to Schedule *A* attached hereto.

1.  Demand, sue for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by the Trustee, and to use or take any lawful means for recovery by legal process or otherwise, including but not limited to the substitution of trustee serving under a Deed of Trust, the preparation and issuance of statements of breach, notices of default, and/or notices of sale, accepting deeds in lieu of foreclosure, evicting (to the extent allowed by federal, state or local laws) foreclosing on the properties under the Security Instruments by judicial or non-;judicial foreclosure, actions for temporary restraining orders, injunctions, appointments of receiver, suits for waste, fraud and any and all other tort, contractual or verifications in support thereof, as may be necessary or advisable in any bankruptcy action, state or federal suit or any other action.

2.  Execute and/or file such documents and take such other action as is proper and necessary to defend the Trustee in litigation and to resolve any litigation where the Servicer has an

obligation to defend the Trustee, including but not limited to dismissal, termination, cancellation, rescission and settlement.

3.  Transact business of any kind regarding the Loans, as the Trustee's act and deed, to contract for, purchase, receive and take possession and evidence of title in and to the Property and/or to secure payment of a promissory note or performance of any obligation or agreement relating thereto.

4.  Execute, complete, indorse or file bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the borrowers and/or the Property, including but not limited to the execution of estoppel certificates, financing statements, continuation statements, releases, satisfactions, reconveyances, assignments, loan modification agreements, payment plans, waivers, consents, amendments, forbearance agreements, loan assumption agreements, subordination agreements, property adjustment agreements, management agreements, listing agreements, purchase and sale agreements, short sale transactions and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of the Trustee.

5.  Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

6.  Execute any document or perform any act in connection with the administration of any PMI policy or LPMI policy, hazard or other insurance claim relative to the Loans or related Property.

7.  Execute any document or perform any act described in items (3), (4), and (5) in connection with the termination of any Trust as necessary to transfer ownership of the affected Loans to the entity (or its designee or assignee) possessing the right to obtain ownership of the Loans.

8.  Subordinate the lien of a mortgage, deed of trust, or deed or other security instrument to secure debt (i) for the purpose of refinancing Loans, where applicable, or (ii) to an easement in favor of a public utility company or a government agency or unit with powers of eminent domain, including but not limited to the execution of partial satisfactions and releases and partial reconveyances reasonably required for such purpose, and the execution or requests to the trustees to accomplish the same.

9.  Convey the Property to the mortgage insurer, or close the title to the Property to be acquired as real estate owned, or convey title to real estate owned property ("REO Property").

10.  Execute and deliver any documentation with respect to the sale, maintenance, preservation, renovation, repair, demolition or other disposition, of REO Property acquired through a foreclosure or deed-in-lieu of foreclosure, including, without limitation: permits, remediation plans or agreements, certifications, compliance certificates, health and safety certifications, listing agreements; purchase and sale agreements; grant / limited or special warranty / quit claim deeds or any other deed, but not general warranty deeds, causing the transfer of title of the property to a party contracted to purchase same; escrow instructions; and any and all documents necessary to effect the transfer of REO Property.

11. Servicer has the power to execute additional limited powers of attorney and delegate the authority given to it by U.S. Bank National Association, as Trustee, under the applicable servicing agreements for the Trusts listed on Schedule A, attached.

12. To execute, record, file and/or deliver any and all documents of any kind for the purpose of fulfilling any servicing duties, including but not limited to those listed in subparagraphs (1) through (11), above, where Trustee's interest is designated, stated, characterized as or includes any reference to one or more of the following: "Indenture Trustee", "Owner Trustee", "Successor Trustee", "Successor in Interest", "Successor to" "Successor by Merger", "Trustee/Custodian", "Custodian/Trustee" or other similar designation.

Trustee also grants unto Servicer the full power and authority to correct ambiguities and errors in documents necessary to effect or undertake any of the items or powers set forth in items (1) to (12), above.

In addition to the indemnification provisions set forth in the applicable servicing agreements for the Trusts listed on Schedule A, attached, Servicer hereby agrees to indemnify and hold the Trustee, and its directors, officers, employees and agents harmless from and against any and all liabilities, obligations, losses, damages, penalties, actions, judgments, suits, costs, expenses or disbursements of any kind or nature whatsoever incurred by reason or result of the misuse of this Limited Power of Attorney by the Servicer. The foregoing indemnity shall survive the termination of this Limited Power of Attorney and the related servicing agreements or the earlier resignation or removal of the Trustee for the Trusts listed on Schedule A.

**Witness** my hand and seal this 13th day of June, 2018.

**NO CORPORATE SEAL**

On Behalf of the Trusts, by
U.S. Bank National Association,
as Trustee

_____
Witness: Brad Weber

By: _____
John G. Richards II, Vice President

_____
Witness: Jose Amaya

By: _____
Michael Y. Wang, Vice President

_____
Attest: Jesse J. Barkdull, Assistant Vice President

## CORPORATE ACKNOWLEDGMENT

State of Minnesota

County of Ramsey

On this 13th day of June, 2018, before me personally appeared John G. Richards II, Michael J. Wang and Jesse J. Barkdull, to me personally, who being by me duly sworn, did say that they are the Vice President, Vice President, and Assistant Vice President, respectively of U.S. Bank National Association Corporation, and that the instrument was signed in behalf of corporation by authority of its board of directors, and Brad Weber and Jose Amaya acknowledged the instrument to be the free act and deed of the corporation.

WITNESS my hand and official seal.

Signature: _Joshua Rosenow_
                Joshua Rosenow

My commission expires: 1/31/2021

JOSHUA EDWARD ROSENOW
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2021

2022148181  DEED BOOK 30599 Pg 750
Debra DeBerry
Clerk of Superior Court
DeKalb County, Georgia

## Schedule A

**U.S. Bank National Association, as Trustee, in connection with the following agreements, with terms as defined therein:**

Angel Oak Mortgage Trust I, LLC 2018-PB1